United States District Court
District of Massachusetts

```
_____
                              )
ROBERT SONIA,                 )
        Plaintiff,            )
                              )
        v.                    )      Civil No.
                              )      11-10666-NMG
TOWN OF BROOKLINE,            )
DAVID HILL,                   )
BRENDAN KELLEHER,             )
YU KAJITA,                    )
DANIEL AVILA                  )
        Defendants.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the alleged assault of Robert Sonia ("plaintiff" or "Sonia") by off-duty police officers at a bachelor party of police officer Daniel Avila ("Officer Avila"). Sonia brings claims for federal and state civil rights violations against defendant police officers David Hill ("Officer Hill"), Brendan Kelleher ("Officer Kelleher"), Yu Kajita ("Officer Kajita") and Officer Avila (collectively, "Officers"). Sonia also asserts a claim against the Town of Brookline for failure to train and supervise the Officers, in violation of 18 U.S.C. § 1983.

**I.   Factual Background**

The following facts are drawn from the Complaint and accepted as true for purposes of resolving the motion for judgment on the pleadings.

Robert Sonia is employed as a driver for an adult entertainment company.  On March 28, 2010, he was dispatched by his employer to transport an exotic dancer to a private party at 1774 Beacon Street in Brookline, Massachusetts.  Upon their arrival at approximately 4:30 a.m., the party appeared to be over: only two men were present and both appeared to be intoxicated.  One of the men informed Sonia that "the bachelor" had already left and the services of the dancer were no longer needed.  The men then identified themselves as police officers and warned Sonia and the dancer to "get the f... out" of the apartment.  They complied.

As plaintiff got into his car, another vehicle pulled up. Two men got out and entered the apartment.  Before leaving, plaintiff called to inform his employer that the men had cancelled the session and refused to pay.  During the call, the dancer noticed someone photographing their car.  She informed the plaintiff and he got out of the car to investigate.  Suddenly, out of the corner of his eye, he saw someone charging at him. The defendants converged and began punching and kicking him.  The plaintiff staggered into the middle of the road, where the defendants forced him to the ground and handcuffed him with his hands behind his back.

At least one neighbor witnessed the commotion and called 911.  At some point thereafter, an ambulance and other police

cruisers arrived.  Emergency medical technicians placed the plaintiff on a stretcher and prepared to transport him to the hospital.  A police sergeant who had arrived at the scene prevented the ambulance from leaving before the officers could discuss what happened.  Plaintiff was eventually taken to the hospital, where he was diagnosed with a broken eye socket and broken ribs.

## II.  **Procedural History**

On April 18, 2011, Sonia filed a four-count Complaint in this Court.  The first three claims were brought pursuant to 42 U.S.C. § 1983.  Count I alleges that the Officers used excessive force in violation of his more general Fourth Amendment right to be free from unreasonable seizures.  Count II alleges that the Officers conspired to deprive plaintiff of his constitutional rights by plotting to assault him and concocting a story they hoped would result in plaintiff's arrest and their exoneration. Count III alleges that the Town of Brookline had a custom, policy or practice of failing to investigate, discipline, supervise or train its officers, which demonstrated a deliberate indifference to the plaintiff's rights and directly caused the constitutional violations alleged in Count I.  Count IV is a state-law claim against the Officers for violation of the Massachusetts Civil Rights Act ("MCRA").  Plaintiff has since amended the Complaint to add state-law claims for battery ("Count V"), abuse of process

("Count VI") and malicious prosecution ("Count VII").  In its
Answer, the Town of Brookline filed cross-claims against the
Officers for contribution and indemnification.

On December 21, 2011, the Town of Brookline moved, pursuant
to Fed. R. Civ. P. 12(c), for judgment on the pleadings on Count
III of the Amended Complaint, the sole claim brought against the
Town.  That motion was opposed by the plaintiff and, in an
unusual twist, was also opposed by the Officers.  Neither the
Officers nor the plaintiff have moved for judgment on the
pleadings.

## III. **<u>Analysis</u>**

### A.   **Legal Standard**

While it differs from a Rule 12(b)(6) motion to dismiss in
that it is filed after the close of pleadings and "implicates the
pleadings as a whole," a Rule 12(c) motion for judgment on the
pleadings is governed by the same standard. <u>Perez-Acevedo</u> v.
<u>Rivero-Cubano</u>, 520 F.3d 26, 29 (1st Cir. 2008).  To survive a
motion for judgment on the pleadings, a complaint must contain
sufficient factual matter to state a claim for relief that is
actionable as a matter of law and "plausible on its face."
<u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell</u>
<u>Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)).  Assessing
plausibility is a "context-specific task that requires the
reviewing court to draw on its judicial experience and common

sense" to determine whether the well-pled facts alleged in the complaint are sufficient to "permit the court to infer more than the mere possibility of misconduct." Iqbal, 129 S. Ct. at 1950.

In considering the merits of a Rule 12(c) motion to dismiss, a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). The Court should treat "any allegations in the answer that contradict the complaint as false." Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010).  In addition to the complaint and the answer, a court may also consider documents "the authenticity of which are not disputed by the parties" or those documents that are "central to the plaintiffs' claim" or "sufficiently referred to in the complaint." Id. at 361 (citing Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007)).

### B.  Application

The Town of Brookline asserts that the Amended Complaint 1) does not allege facts sufficient to support the claim that the Officers acted under color of state law and 2) fails to state a claim for municipal liability.  The Court begins by considering the former assertion.

### 1.  Under Color of Law

A police officer who violates the constitutional rights of another is not subject to civil liability under 42 U.S.C. § 1983

unless he does so "under color of law," which is a formal way of saying that he acted in his capacity as a police officer, not as a private citizen. See Barreto-Rivera v. Medina- Vargas, 168 F.3d 42, 45 (lst Cir. 1999) (explaining color of law requirement). Resolving whether the actions of a police officer were made "under color of law" requires a court to make a sophisticated assessment of "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." Id. at 46.  Objective factors such as "a police officer's garb, an officer's duty status, the officer's use of a service revolver, and the location of the incident" are pertinent to the analysis. Id. at 45.  Less probative but also relevant are the subjective perceptions of the participants. Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 126 (1st Cir. 1999). The factors "must not be assessed mechanically" but are to be weighed carefully in light of prior precedent and the totality of the circumstances. Barreto-Rivera, 168 F.3d at 45-46.

A survey of the case law elucidates the line between acting as a police officer and acting as a private citizen.  In Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445 (lst Cir. 1997), the First Circuit concluded that an off-duty officer who shot and killed a man outside a bar was not acting under color of law.  At the time of the incident, the officer was on medical leave and, although he was not in uniform, he was carrying his police

identification and service revolver.  <u>Id.</u> at 446.  The record is
silent on what prompted the altercation but at some point the
officer announced that he was a "cop" and displayed his
identification.  <u>Id.</u> at 447.  The decedent then challenged the
officer to "step outside" but told him to "leave the gun."  <u>Id.</u>
The men stepped outside but the officer brought his gun.  <u>Id.</u>  When
they began to fight, the officer pulled out his weapon and shot the
decedent six times.  <u>Id.</u>  On the basis of those facts, the First
Circuit concluded that even though some factors indicated that the
officer was purporting to act in his official capacity, i.e., his
statement of authority and display of identification, most of the
officer's conduct demonstrated that he was acting in a private
capacity.  <u>Id.</u> at 450-51.  In affirming the district court's grant
of summary judgment in favor of the defendant, the Court placed
particular emphasis on the officer's acceptance of the decedent's
invitation to engage in a private brawl.  <u>Id.</u> at 451.

The episode giving rise to the claim in <u>Barreto-Rivera</u> v.
<u>Medina-Vargas</u>, 168 F.3d 42 (1st Cir. 1999) began when the
defendant officer, driving in his cruiser, pulled over the
decedent and demanded to see the his license and registration.
<u>Id.</u> at 44.  The decedent refused and accused the officer of
making a pass at his wife.  <u>Id.</u> The two men exchanged punches but
were separated by onlookers.  <u>Id.</u>  At some later point, the
decedent picked up a pipe and approached the officer.  <u>Id.</u>  Even

-7-

though onlookers took the pipe from the decedent, the officer still radioed for back-up, stating: "10-50, I have been attacked. Hurry up, this guy is acting tough and I am going to have to shoot him." Id.  When the decedent did not back down, the officer made good on his promise. Id.  On those facts, the district court granted summary judgment for the defendants, likening the case to the private brawl in Parrilla-Burgos. See id. at 46-47.  The First Circuit reversed, emphasizing the many indicators of official action, e.g., the officer was on duty, in uniform, patrolling in his cruiser; he relied on his authority as a police officer; he used his nightstick, "a police-issued weapon and a potent symbol of police authority"; he summoned help on his police radio; and he ultimately shot and killed the decedent with his service revolver. Barreto-Rivera, 168 F.3d at 47-48.  In light of those facts, the First Circuit was "unwilling to say that [the officer's] conduct was so clearly personal in nature that a jury could reach only one outcome." Id.

In Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122 (1st Cir. 1999), two off-duty police officers intervened in a fight between the bar's owner and a patron. Id. at 123-24.  Having ended their shift earlier that evening, the officers remained armed and in uniform. Id. at 124.  After the officers pulled the men apart, one of the officers began beating the bar patron with a pool cue, a billiard ball, his boots and his service revolver. Id.  By all

accounts, the beating was vicious and unnecessary. Id.  The officers then announced their status as police officers, handcuffed the patron, threw him out of the bar, searched his person, stole his wallet and cocaine and left the scene. Id.  The patron later died of internal injuries. Id.  Highlighting the brutality of the beating and the theft of the victim's wallet, the district court concluded as a matter of law that the defendants were not acting as police officers. Id. at 128.  Again the First Circuit disagreed. The Court noted that the officers "entered an already developed dispute between two private individuals, and their action in helping to pull [them] apart was consistent with the responsibility of police officers to defuse violent situations." Id.  The Court also found relevant the defendants' announcement of their status as police officers, their use of handcuffs and a service weapon and the subsequent search and seizure. Id.  From the First Circuit's perspective, the circumstances permitted a jury finding that the officers were acting under color of law. Id.

Against that backdrop, this Court turns to the present case. A procedural irregularity is worth noting at the outset.  Most challenges to the color-of-law element in § 1983 cases are raised jointly by the defendant officers and municipalities and opposed by the plaintiffs.  Here, the Officers join the plaintiff in opposing the Town of Brookline's contention that they did not act under color of law.  In effect, the officers "admit" that they

were acting under color of law.  Whether or not the Officers are
overcome by honesty or, more likely, are seeking to buttress
their cross-claims against the Town of Brookline for contribution
and indemnification, their admission does not control the analysis.
An officer cannot consent to have acted "under color of law."
See Barreto-Rivera, 168 F.3d at 46 (explaining color of law
analysis depends upon totality of circumstances but particularly
upon officer's purpose at time of the act).

It also warrants mention at the outset that this case is in
a different procedural posture than those described above.  The
district courts in those cases were called upon to examine the
factual record to decide whether there were sufficient indicia of
public action to support a jury finding in favor of the plaintiff
on the color-of-law issue.  This Court's task is simpler.  It
need not weigh the evidence or take a position on which party's
version of the events is more credible.  In considering a motion
to dismiss, this Court must simply decide whether the facts
alleged in the complaint, if proven, are sufficient to support a
finding that the officers acted under color of state law.

The color-of-law issue is a close one.  On the one hand, a
number of factors support a finding that the Officers were not
acting under color of law.  The dispute was at a private
residence.  The Officers were off duty and out of uniform.  They
were highly intoxicated.  They were not responding to an unruly

bachelor party; they <u>were</u> the unruly bachelor party. <u>Compare</u>
<u>Zambrana-Marrero</u>, 172 F.3d at 124 (officers acted under color of
law by responding to "an already developed dispute between two
private individuals"), <u>with</u> <u>Parrilla- Burgos</u>, 108 F.3d at 451
(officer did not act under color of law when his actions
precipitated a private dispute).  Neighbors who witnessed the
brawl called the police, apparently unaware that the police were
the ones allegedly doing the beating.

On the other hand, there are multiple indicia of state
action that support a finding in favor of the plaintiff.  The
Officers identified themselves as police.  They photographed the
plaintiff's license plate, handcuffed the plaintiff during the
altercation and informed him that he was under arrest, all forms
of police techniques and functions. Finally, the plaintiff
reasonably perceived that the Officers were acting as police
officers.

It is the combination of these factors that persuades the
Court that it is premature to rule that none of the Officers was
acting under color of law at any point during the incident.
While the Officers allegedly precipitated the dispute, as did the
police in <u>Barreto-Rivera</u> and <u>Zambrana-Marrero</u>, they employed a
"symbol of police authority" when they placed plaintiff under
arrest.  In constrast to the officer's actions in <u>Parilla-Burgos</u>,
shooting someone does not project police authority as uniquely as

does the act of detaining someone in the name of the sovereign. Accordingly, the Court finds that plaintiff has pled sufficient facts to claim that the Officers acted under color of law.

### 2. Municipal Liability

A municipality may not be held vicariously liable under 42 U.S.C. § 1983 on account of their employees' unlawful conduct. Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). Rather, municipalities are held responsible under § 1983 only for their own illegal acts. Id. To succeed on a § 1983 claim against a municipality, the plaintiff must show that "action pursuant to official municipal policy" caused the plaintiff's injury. Id. "Official municipal policy" includes the decisions of a government's lawmakers, the acts of its policymaking officials and practices "so persistent and widespread as to practically have the force of law." Id.

In limited circumstances, a § 1983 claim against a municipality will lie where a municipality's failure to train certain employees regarding their legal duties manifests "deliberate indifference" toward the constitutional rights of its citizens. Id. In order to prove that a municipality acted with deliberate indifference (or failed to act at all), a plaintiff must show that the municipality "disregarded a known or obvious" risk, which is ordinarily demonstrated by adducing a pattern of similar constitutional violations by untrained employees. Id. at

-12-

1360.  In such cases, a municipality's inaction is the functional equivalent of an actual decision to violate the Constitution.  Id.

In an even narrower range of circumstances a plaintiff may establish "deliberate indifference" based upon a single incident of misconduct, where the municipality's failure could have avoided a "highly predictable consequence" that was "so patently obvious" that it could be liable without proof of a preexisting pattern of violations.  Id. at 1360.  However, in most cases a claim of failure to train based on a single incident will not succeed.  See Calvi v. Knox County, 470 F.3d 422, 429 (1st Cir. 2006) (showing one individual inadequately trained "insufficient" because "training program as a whole must be found faulty").

Plaintiff alleges in Count III of his Amended Complaint that the Brookline Police Department has an "always on duty" policy, pursuant to which an off-duty officer may activate himself to on-duty status if he wishes to use his police powers.  On plaintiff's information and belief, the Town of Brookline has no training program to teach its officers as to the circumstances under which activation is authorized and appropriate.

Based on these allegations, plaintiff claims that the Town of Brookline caused the plaintiff's injury by enacting the deficient "always on duty" policy and then tolerating a custom of poor implementation.  Plaintiff also claims that the Town failed to train its officers on the policy. That failure purportedly

evinces the Town's deliberate indifference to the constitutional rights of its citizens by creating situations where officers activate themselves to on-duty status in inappropriate circumstances, such as when officers are intoxicated or involved in personal disputes.  Finally, the plaintiff claims that the Town's failure to supervise and discipline its police officers directly precipitated the constitutional violations at issue.

The Town of Brookline argues that Count III should nonetheless be dismissed for two reasons: 1) because it states bare legal conclusions unsupported by reference to any discrete policy or decision sufficient to show that the Town caused plaintiff's injury, and 2) because the allegations regarding the Town's failure to train police officers with respect to the "always on duty" policy are insufficient to demonstrate that the Town acted with deliberate indifference.  The Court addresses the arguments seriatum.

### a.    Existence of a policy or custom

As a duly enacted regulation of the Town's Board of Selectmen, the "always on duty" policy qualifies as an "official municipal action" for purposes of a § 1983 claim.  However, the "always on duty" policy could not have caused the plaintiff's injury because the policy forbids the actions of the individual

defendants as alleged in the Amended Complaint.[1]

The plaintiff alleges that the Officers assaulted and arrested him after they refused to pay his company for services that they had requested for a bachelor party. The Officers activated themselves pursuant to the "always on duty" policy at "some point" prior to their alleged assault of the plaintiff, while they were intoxicated. The first claim, then, is that the Town's enactment of the "always on duty" policy caused the plaintiff's injuries because the officers activated themselves pursuant to it during the assault.

The Town has attached a copy of the "always on duty" policy to the instant motion. Because the policy is referred to in the plaintiff's Amended Complaint and its authenticity is not disputed, the Court will treat its contents as part of the allegations for purposes of resolving the motion to dismiss.

The "always on duty" policy explicitly prohibits officers from making an off-duty arrest when the arresting officer is "personally involved" in the incident and excepts from permitted arrests any arrests in which the officer is "personally involved." According to the policy, off-duty officers are "personally involved" whenever they (or their friends or

---

[1] The individual defendants contest the plaintiff's version of the events in their response to the instant motion but the Court is limited to the pleadings contained in the complaint, the answer and certain documents referred to therein, and it may not consider factual allegations that contradict the plaintiff's allegations at this stage. See Santiago, 741 F. Supp. at 360.

-15-

relatives) are engaged in the incident prior to the arrest, unless those off-duty officers are the victims of a crime. Here, the Officers themselves were engaged in a dispute with the plaintiff prior to arresting him. Accepting the plaintiff's allegations as true, the plaintiff took no action that could have made any of the defendants the victim of a crime. The Officers could not have been more "personally involved" in the dispute, and therefore, acted in plain violation of the "always on duty" policy enacted by the Town. Because their actions were not authorized by the "always on duty" policy, the policy could not have caused the plaintiff's injury.

The plaintiff also argues that the policy is deficient because it does not prohibit off-duty officers from activating after they have been drinking. Because the Officers would still be "personally involved" in the incident regardless of whether they had had a single drink, and thus would still be in violation of the Town policy, the Court need not address this aspect of the plaintiff's claim.

Alternatively, plaintiff alleges that the Town tolerated a custom of, among other things, officers activating themselves to on-duty status in inappropriate circumstances, and that this custom caused the plaintiff's injury. As discussed further below, plaintiff does not allege any further incidents involving inappropriate activation beyond the incident in question, let

alone practices "so persistent and widespread" so as to have the
de facto force of law.  Therefore, the plaintiff fails to allege
a custom that could have caused the plaintiff's injury.

> **b.   Failure to train, supervise, and discipline**

The Supreme Court has recently stated that failure to train
claims present the "most tenuous" form of claims brought under
§ 1983 because the municipality's culpability is at its lowest.
See Connick, 131 S.Ct. 1359.  Taken in this light, the
plaintiff's claim for relief based upon a failure to train the
Officers clearly fails because the allegations lack either a
pattern of similar constitutional violations or a "patently
obvious" risk created by the "always on duty" policy that would
transform the Town's inaction into deliberate indifference.

First, the plaintiff makes no reference to any incidents
beyond the one at issue in this case.  There is no suggestion in
the pleadings that there has been a rash of incidents of
personally involved or intoxicated off-duty cops making unlawful
arrests or using excessive force.  Even assuming that the Town
has no training program to teach its officers as to the
circumstances under which they may activate themselves from off-
duty to on-duty, the Town cannot be held responsible for the
Officers' actions absent a pattern of constitutional violations
putting them on notice of the problem.

Second, absent a pattern of similar incidents, the

plaintiff's claim rests upon a "single incident" theory of
municipal liability.  Plaintiff alleges that the Town's failure
to train officers regarding the "always on duty" policy created a
risk of constitutional violation so patently obvious that the
Town should have known that an incident like the one at issue
here would occur.  As discussed supra, it is extremely difficult
to sustain a failure to train claim based upon a single incident
of misconduct and the instant case does not rise to that level.

The Supreme Court case that generated the "single incident"
theory envisioned consequences more probable and more dire than
even a simple assault.  In City of Canton v. Harris, the Supreme
Court gave the example of a city that armed its police force with
firearms and deployed them into the public to capture fleeing
felons without training the officers in the constitutional
limitations on the use of deadly force. See 489 U.S. 378, 390
n.10 (1989).  Commenting in a more recent case, the Supreme Court
acknowledged that under those circumstances, the municipality
could be found to be deliberately indifferent on account of both
the known frequency of the situation the hypothetical officers
confronted and the predictability that the officers would lack
the tools that they needed, absent proper training.  Id.

The law in this circuit accords with this skeptical view.
In Young v. City of Providence, the First Circuit reversed a
district court's order granting summary judgment on a failure to

-18-

train claim in the context of a friendly fire incident.  404 F.3d 4 (1st Cir. 2005).  Young was a Providence police officer, and his mother brought suit when he was killed by two fellow officers who mistook him for a suspect while responding to a call.  Id. at 9.  Among other claims, Young alleged that the city was liable for failing to train its officers on Providence's always on duty policy.  Id.  After discussing Canton, the First Circuit concluded that a jury could find Providence liable based upon a single incident because departmental policy literally required officers to respond to incidents while off-duty and to always carry a firearm.  Id. at 28-29.  Under such circumstnaces, the jury could find that "friendly fire shootings were likely to occur" and that the department should have acted upon the risk, in spite of the rarity of such incidents, because of the "severity of the consequences."  Id. at 29.

The instant case does not present the risk of such predictable or egregious consequences identified in Canton or confronted in Young.  While there is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force, Connick, 131 S. Ct. at 1361, the failure to train Brookline cadets concerning the meaning of "personally involved" does not predict constitutional violations because cadets possess the tools to determine when they are off-duty and when they are engaged in a dispute.  Nor

does it predict that cadets who are personally involved in a
dispute will then assault those individuals who the conflicted
police officer wrongfully arrested.  Unlike the policy at issue
in Young, the Town's "always on duty" policy permits intervention
by off-duty police but does not mandate it, and, far from
requiring officers to carry their firearms, states that officers
will never be disciplined for declining to intervene in a
situation because they are not armed.

While the plaintiff argues that the Town's policy is
problematic because it allows activation under certain
circumstances or does not expressly prohibit any activation when
an off-duty officer has been drinking, "the fact that training is
imperfect or not in the precise form a plaintiff would prefer is
insufficient" to establish deliberate indifference. Young, 404
F.3d at 27.  Accordingly, plaintiff's allegations fail to
establish that the Town's inaction amounted to deliberate
indifference toward the rights of its citizens and cannot render
it liable for the Officers' actions.

The same analysis disposes of the plaintiff's claims of
failure to supervise and failure to discipline brought against
the Town because both claims require a showing of deliberate
indifference and causation.  See Febus-Rodriguez v. Betancourt-
Lebron, 14 F.3d 87, 93-94 (1st Cir. 1994).  Even if other on-duty
officers acted in concert with the off-duty defendants to cover-

up this incident, and were not subsequently disciplined, the Town cannot be liable for that oversight because it does not establish that the Town was on notice or that its failure caused the plaintiff's injury in this case.

**ORDER**

In accordance with the foregoing,

1)    the Court finds that plaintiff has alleged sufficient facts to demonstrate that the defendant officers acted under color of law, but

2)    because the plaintiff's injury was not caused by a municipal policy, custom or failure to train defendant officers, the Town of Brookline's motion for judgment on the pleadings (Docket No. 36) is **ALLOWED**, and

3)    Count III of the Amended Complaint is **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton

Nathaniel M. Gorton
United States District Judge

Dated September 27, 2012

-21-